867 So.2d 745 (2003)
Virginia SHULTZ
v.
David SHULTZ, Jr.
No. 2002 CA 2534.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
Michael S. Walsh, Baton Rouge, Counsel for Plaintiff/Appellee Virginia Shultz.
Brian J. Pendergast, Baton Rouge, S. Stephen Spring, II, Baton Rouge, Counsel for Defendant/Appellant David Shultz, Jr.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
DOWNING, J.
David Shultz appeals a family court judgment in which the trial court declined to reduce ordered child support after it found that no extra-judicial agreement existed between him and his ex-wife, Virginia Shultz, concerning modification of child support. Concluding the trial court erred in this regard, we reverse the judgment of *746 the trial court in part and remand with instructions.

FACTS AND PROCEDURAL HISTORY
Virginia Shultz filed a petition for divorce from David Shultz in July 1997. In September 1997, the trial court signed a judgment on rule granting both parents joint custody of the two children, Jacob, then almost eight years old, and Sarah, then four years old, but naming Virginia primary domiciliary parent. Mr. Shultz was ordered to pay $969.30 per month, reflecting child support, day care expenses, and a credit for Mrs. Shultz's share of the children's insurance premiums. Soon after the trial court entered this order, Mr. Shultz began paying $650.00 per month toward this obligation, allegedly with the agreement of Mrs. Shultz.
In August 2000, Jacob moved in with his father, after which Mr. Shultz began paying $450.00 per month toward his child support obligation, also allegedly with the agreement of Mrs. Shultz. Mr. Shultz did not seek any court order to formally reduce the amount of child support or to change primary domiciliary custody of Jacob.
In December 2001, Mr. Shultz filed a rule for modification of custody in which he prayed for primary domiciliary custody of their daughter, Sarah. In this motion, Mr. Shultz also prayed for an order recognizing the alleged extrajudicial agreement regarding reduced child support. The trial court denied the change of custody and declined to recognize that any extrajudicial agreement regarding reduced child support existed between the parties. The trial court also denied Mr. Shultz's motion for new trial.
Mr. Shultz appeals the oral judgment of July 24, 2002 that denied him a new trial,[1] alleging in one assignment of error[2] that "[t]he trial court erred in finding that no extra judicial agreement to reduce and/or modify the original child support obligation between the parties." He did not specifically appeal the underlying trial court judgment dated May 1, 2002.

DISCUSSION

Appeal Of New Trial Judgment
Preliminarily, we observe that "[t]he established rule in this circuit is that the denial of a motion for new trial is not an appealable judgment absent a showing of irreparable harm." Pittman v. Pittman, 01-2528, p. 3 (La.App. 1 Cir. 12/20/02), 836 So.2d 369, 372, writ denied, 03-1365 (La.9/19/03), 853 So.2d 642. Even so, we note that "the supreme court has directed us to consider an appeal of the denial of a motion for new trial as an *747 appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case." Carpenter v. Hannan, 01-0467, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 02-1707 (La.10/25/02), 827 So.2d 1153. Accordingly, we consider Mr. Shultz's appeal as an appeal of the merits of the underlying judgment.

Extrajudicial Agreements
In its judgment, the trial court specifically found that "there was no extra-judicial agreement between Virginia Shultz and David Shultz, Jr. with regard to a modification of child support." And regarding the first reduction to $650.00 per month, paid from September 1997 through August 2000, we agree. There is no evidence in the record showing that Mrs. Shultz ever agreed to this sum. While she never challenged this amount or filed a rule for contempt for non-payment of child support, we cannot conclude the trial court was manifestly erroneous in finding Mrs. Shultz did not agree to this reduction where no evidence supports such an agreement.
Regarding the subsequent reduction to $450.00 per month after Jacob moved in with Mr. Shultz, however, the record shows Mrs. Shultz expressly agreed to the reduction. The trial court, however, found that this agreement was coerced. In its written reasons, it stated that it could not find an extrajudicial agreement "because I find that Ms. Shultz felt she was coerced and did not voluntarily agree to this reduction[.]" We conclude the trial court was erroneous in this regard.
In essence, the trial court found that Mrs. Shultz's consent was vitiated by the vice of consent of duress.[3] Louisiana Civil Code art.1959, concerning the nature of duress, states that, "Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." Comment (b) to this article provides the following definition and commentary on duress:
According to Black's Law Dictionary (Rev. 4th ed.1968), duress means: "Unlawful constraint exercised upon a man whereby he is forced to do some act that he otherwise would not have done. It may be either `duress of imprisonment,' where the person is deprived of his liberty in order to force him to compliance, or by violence, beating, or other actual injury, or duress per minas, consisting in threats of imprisonment or great physical injury or death. Duress may also include the same injuries, threats, or restraint exercised upon the man's wife, child, or parent." For the drafters of the Restatement of the Law, Second, Contracts, duress takes two forms. In one, a person physically compels conduct that appears to be a manifestation of assent by a party who has no intention of engaging in that conduct. The result of this type of duress is that the conduct is not effective to create a contract. In the other, a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent. The result of this type of duress is that the contract that is created is voidable by the victim. This latter type of duress is in practice the more common and more important.

*748 Restatement, Second, Contracts, §§ 174 and 175 (1981). In sum, "duress" is a word of art or technical word in the English language which expresses exactly what is meant by "violence or threats" in C.C. Arts. 1850-1852 (1870). (Emphasis added.)
We have carefully reviewed the record and can find no evidence of the use of force or threats by Mr. Shultz against Mrs. Shultz. Nor is there evidence that she lacked reasonable alternatives. While Mrs. Shultz expressed a fear of Mr. Shultz and an assertion that he is a violent man, her testimony was that she agreed because she did not want an argument and wanted to avoid going to court. The record reflects no threats or improper inducements to force her agreement. Accordingly, we conclude the trial court erred in finding Mrs. Shultz's consent to a reduction in child support was vitiated by the vice of consent of duress.

Stogner
Our inquiry does not conclude here, however. In Richardson v. Richardson, 02-2415 (La.App. 1 Cir. 7/9/03), 859 So.2d 81, this court considered the deference owed to stipulated judgments in light of the Louisiana supreme court's decision in Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762. We observed first that under La. R.S. 9:315.1D, the trial court could accept stipulated provisions relating to child support or could categorically reject them in favor of the guidelines. See Richardson, 02-2415 at p. 5, 859 So.2d 81 at 85. We noted that if the stipulation was not rejected, the trial court was required to consider the guidelines for adequacy. Id. We then concluded that if the stipulation were accepted, it would be enforced only so long as it did not derogate from the public interest or the best interest of the child. Id. We conclude that these constraints apply equally to extrajudicial agreements regarding modification of child support.
Here, the record does not contain worksheets showing how the guidelines would apply at the pertinent times when Mr. Shultz was paying $450.00 per month. Nor do we know from the record the duration or terms of the agreement to reduce. And we decline to usurp the trial court's prerogative to accept or reject the agreed reduction in the amount of child support. Accordingly, we remand this matter to the trial court for review of the agreed reduction in child support.
The trial court is to consider all relevant factors including whether deviation from the guidelines pursuant to La. R.S. 9:315 B and C is appropriate due to the fact that Jacob was in Mr. Shultz's physical custody during the time of the agreed reduction.

DECREE
For the foregoing reasons, we reverse the judgment of the trial court in its finding that no extrajudicial agreement existed between Mr. and Mrs. Shultz to reduce child support payments to $450.00 per month. We remand this matter to the family court to consider Mr. Shultz's request to enforce that agreement with Mrs. Shultz and the application of La. R.S. 9:315.1D to the agreement. Costs of this appeal are assessed equally between Mr. and Mrs. Shultz.
REVERSED IN PART; REMANDED WITH INSTRUCTION.
McCLENDON, J., concurs in part and dissents in part and assigns reasons.
McCLENDON, Judge, concurring in part and dissenting in part.
I respectfully concur in part and dissent in part. I agree with the majority's decision to the extent that it upholds one of the extrajudicial agreements between Mr. *749 and Mrs. Shultz. However, I believe that the record is sufficient to decide this matter on appeal and that a remand is not necessary.
NOTES
[1] In his notice of appeal, Mr. Shultz appeals the judgment of July 24, 2002. On July 24, 2002, the trial court orally denied his motion for new trial, and a minute entry was entered to this effect. No written judgment denying the new trial is contained in the record. However, a written judgment is unnecessary. "The denial of a motion for new trial may be made by minute entry and does not require a signed judgment. La. C.C.P. art.1914[.]" Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,411, p. 4 (La.App. 2 Cir. 12/8/99), 748 So.2d 594, 598. See also Boyd v. Fourchon, Inc., 408 So.2d 380, 382 (La.App. 1 Cir.1981). The record does contain an appropriate minute entry.
[2] By order dated February 13, 2003, this court ruled that Mr. Shultz's appeal was filed timely where it seeks review of the trial court's determination that there was no extrajudicial agreement regarding child support. The appeal was maintained in this regard only. The appeal was dismissed as to the remainder of the judgment dealing with relocation of the children and visitation for the two minor children.
[3] We note that Mrs. Shultz did not raise or argue duress as an affirmative defense as required by La. C.C.P. art. 1005. Mr. Shultz, however, did not assign error on appeal in this regard, so we do not consider whether the trial court was erroneous in basing its finding on duress.